# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ABBOTT LABORATORIES and ABBOTT GmbH & CO. K.G., <br>     Plaintiffs, <br> v. <br> QIAGEN GAITHERSBURG, INC., <br>     Defendant. | No. 10 CV 712 <br> Judge Blanche M. Manning |

## MEMORANDUM AND ORDER

Plaintiffs Abbott Laboratories and its German subsidiary, Abbott GmbH & Co. K.G., have filed a motion to compel arbitration and for an antisuit injunction against defendant Qiagen Gathersburg, Inc., all stemming from a dispute over a patent licensing agreement. For the reasons set forth below, Abbott Laboratories' motion to compel arbitration is granted, while the motion to compel arbitration of its German subsidiary is denied, as is the request for an antisuit injunction.

**I.    BACKGROUND**

Abbott Laboratories is a pharmaceutical developer and manufacturer with an international presence, including entities to which the court will refer separately as Abbott US and Abbott Germany, and jointly as Abbott. Abbott filed the instant suit against defendant Qiagen Gaithersburg, Inc., which owns patented technology used to manufacture a test for the human papilloma virus.

Qiagen licensed Abbott US to use its technology. Under that license, Abbott Germany was also entitled to use the technology. But Qiagen purported to terminate the licensing agreement in writing on March 13, 2009, after Abbott allegedly failed to pay all of the royalties

due. In a written response to Qiagen's March 13, 2009, letter, Abbott US disputed that Qiagen had any basis for terminating the agreement or that Qiagen had complied with the procedures to terminate that are set out in the licensing agreement.

Qiagen asserts that Abbott has still not fully paid it all of the royalties due under the licensing agreement, and thus filed suit against Abbott Germany in Germany on November 4, 2009, alleging patent infringement. Abbott US and Abbott Germany responded by filing the instant action in which they seek the following relief: (1) Abbott US's request for an order compelling arbitration over whether the licensing agreement has terminated (Count I); (2) Abbott Germany's request for an order compelling arbitration over the patent infringement issues raised in the German litigation (Count II); and (3) an antisuit injunction against Qiagen enjoining it from proceeding with its patent infringement action against Abbott Germany (Count III).

Before the court is Abbott's motion to compel arbitration and for a preliminary antisuit injunction.

## ANALYSIS

The Federal Arbitration Act provides that:

> a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Courts have broadly interpreted the Act to govern the interpretation, enforcement, and validity of arbitration agreements in commercial contracts. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983). The purpose of the Act is to promote arbitration clauses in commercial contracts, and therefore, courts broadly construe the Act and

resolve any doubts in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 625 (1985); *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24-25. However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986).

## I. MOTION TO COMPEL ARBITRATION

### A. Scope of Arbitration Clause

Article 16 of the licensing agreement contains the arbitration clause, which reads as follows:

> The parties agree that any dispute that arises in connection with this Agreement shall be resolved by binding Alternative Dispute Resolution in accordance with the procedures set forth in Attachment I hereto.

Licensing Agreement [20-1] at 30. Attachment I, in turn, begins as follows:

> The parties recognize that a bona fide dispute as to certain matters may arise from time to time during the term of this Agreement which relates to either party's rights and/or obligations.

*Id.* at Attachment I. The attachment then sets forth deadlines and other requirements the parties must meet as they arbitrate a dispute.

The arbitration clause is broadly worded, requiring that "any" dispute connected to the licensing agreement "shall be" arbitrated. *Id.* at 30. Such provisions are "extremely broad and capable of an expansive reach." *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999).

Nevertheless, Qiagen contends that the dispute over whether the licensing agreement has been terminated falls outside the scope of the arbitration provision because its dispute with

Abbott US arose *after* the agreement had terminated. In support, Qiagen offers the following two arguments. First, it argues that under Attachment I to the licensing agreement, only those disputes arising "during the term of this Agreement" must be arbitrated. Licensing Agreement [20-1] at Attachment I. However, according to the licensing agreement, Attachment I governs only "the procedures" that must be followed in order to arbitrate. *Id.* at 30. Nothing in the arbitration provision supports Qiagen's contention that Attachment I in any way narrows the expansive scope of the arbitration provision.

Second, Qiagen argues that the arbitration provision did not survive the termination of the licensing agreement. As a threshold matter, whether Qiagen successfully terminated the licensing agreement has yet to be determined. In any event, arbitration provisions survive the termination or expiration of the agreement in which they are found unless the agreement expressly provides otherwise. *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 204 (1991) (recognizing "a presumption in favor of postexpiration arbitration of matters unless 'negated expressly or by clear implication'") (internal citation omitted). The only language that Qiagen contends negated the arbitration clause's survival after termination is the language quoted above in Attachment I. However, as also noted above, Attachment I governs only the procedures to initiate arbitration, and has no bearing on the scope of the arbitration provision or whether it survives the termination of the license agreement. In the absence of express language, the provision is presumed to survive. *Id.*

In short, the arbitration provision is expansive in scope and survives the purported termination of the licensing agreement. As a result, whether the licensing agreement has been

terminated is a dispute that falls within the scope of the licensing agreement's mandatory arbitration provision.

B.     **Waiver of Arbitration Clause**

Alternatively, Qiagen argues that even if the dispute over the licensing agreement falls within the scope of the arbitration provision, both Abbott US and Abbott Germany waived the arbitration provision by failing to assert it in the patent infringement suit pending in Germany. A party's conduct that is inconsistent with an arbitration provision can serve to waive the arbitration provision. For instance, in *Illinois Concrete-ICI, Inc. v. Storefitters, Inc.*, 922 N.E.2d 542 (Ill. App. Ct. 2010), a commercial developer gave notice to a concrete contractor under § 34 of Illinois' Mechanics Lien Act that the contractor would need to file suit to enforce its lien against the developer. *Id.* at 544. When the contractor did so, the developer filed a motion to compel arbitration. *Id.* The court concluded that the developer had waived its right to enforce the arbitration provision by invoking a remedy inconsistent with arbitration, *i.e.*, by directing the contractor to file suit. *Id.* at 547.

Qiagen contends that Abbott has likewise waived its right to enforce the arbitration provision because under German rules of civil procedure, a litigant must assert its right to arbitrate during its initial appearance before the German court, which Abbott did not do. Abbott does not take issue with Qiagen's assertions that (1) German rules of civil procedure require a party to assert its right to arbitrate during its initial appearance, or that (2) Abbott Germany failed to assert its right to arbitrate when required to do so. Because Abbott Germany has not contested Qiagen's assertion that it waived its right to enforce the arbitration provision in the licensing agreement, Abbott Germany's right to do so is deemed waived.

However, Abbott US is not a party to the German litigation. Qiagen argues in its surreply brief that it is of no consequence that Abbott US is not a party to the German litigation because Abbott Germany acted as its agent in that litigation and, therefore, Abbott Germany's waiver is binding on Abbott US. But Qiagen's argument is unavailing for two reasons. First, it could have raised the argument in its response brief when it first asserted that Abbott Germany had waived its right to arbitrate under German Code of Civil Procedure 1032(1). Waiting until its surreply brief to first make such an argument operates as a forfeiture of that argument. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) (arguments raised for the first time in a reply brief are forfeited). Second, Qiagen has cited no German law to support its argument that waiver under German Code of Civil Procedure 1032(1) by an agent serves as a waiver by the parent corporation as well. Therefore, for this additional reason Qiagen has forfeited any argument that Abbott US is bound by Abbott Germany's waiver. *See Jarrad v. CDI Telecommunications, Inc.*, 408 F.3d 905, 916 (7th Cir. 2005) (undeveloped arguments unsupported by citations to authority are forfeited).

**C.   Conclusion**

As discussed above, Abbott US is entitled to arbitrate its dispute with Qiagen over whether Qiagen terminated their licensing agreement. Accordingly, Abbott US's motion to compel arbitration is granted. However, Abbott Germany has not contested that it waived its right to enforce the arbitration provision in the licensing agreement and, therefore, its motion to compel arbitration is denied.

## II.     ANTISUIT INJUNCTION

In their motion, Abbott US and Abbott Germany also seek an antisuit injunction against Qiagen to prohibit Qiagen from proceeding with its suit in Germany against Abbott Germany. Abbott argues that it is entitled to an antisuit injunction for two reasons:  (1) the dispute at issue in the German litigation falls within the scope of the arbitration provision of the licensing agreement, and (2) the German litigation is "duplicative and vexatious."  Memorandum [17-1] at 13.

A federal court may enjoin a party before it from litigating in another country.  *See Affymax, Inc. v. Johnson & Johnson*, 420 F. Supp. 2d 876, 883 (N.D. Ill. 2006).  To obtain an antisuit injunction, the party seeking the injunction must first establish that the parties and issues in both proceedings are the same, and that the resolution of the first action would be dispositive of the action to be enjoined.  *See Zimnicki v. Neo-Neon Int'l, Ltd.*, No. 06 CV 4879, 2009 WL 2392065, at *2 (N.D. Ill. July 30, 2009).  If it succeeds, the court then balances a variety of factors, including domestic interests such as the prevention of vexatious or oppressive litigation, as well as international concerns such as comity.  *See U.S. Commodity Futures Trading Com'n v. Lake Shore Asset Mgmt. Ltd.*, No. 07 CV 3598, 2007 WL 2915647, at * 21 (N.D. Ill. Oct. 4, 2007).

Abbott's argument for an antisuit injunction falters at the first step because it cannot show an identity of parties between the dispute to be arbitrated and the litigation pending in Germany. Qiagen's litigation in Germany involves just Abbott Germany, not Abbott US.  In sharp contrast, its arbitration will involve just Abbott US, not Abbott Germany (as noted above, Abbott

Germany has not disputed that it was required to assert its right to arbitrate the German litigation but did not do so).

Thus, the parties to the German litigation are not identical to the parties that will arbitrate, and Abbott US has presented no authority that it should be viewed as one with its subsidiary when identifying the parties to the German litigation. To the contrary, in disputing that whether Abbott Germany waived its right to arbitrate had any bearing on Abbott US's right to arbitrate, Abbott argued vigorously that it is "axiomatic that parent and subsidiary corporations are distinct legal entities." Reply [38-1] at 2.

As a result, Abbott cannot meet the threshold requirement of establishing an identity of parties and, therefore, is not entitled to an antisuit injunction. *See E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 991 (9th Cir. 2006) ("courts will not consider issuing anti-suit injunctions in the absence of parallel local and foreign actions between the same parties over the same claim") (internal citation and quotation marks omitted).

Accordingly, because the parties to the arbitration and German litigation are not the same, Abbott is not entitled to an antisuit injunction.

## CONCLUSION

For the reasons stated above, the motion to compel arbitration and for an antisuit injunction [16-1] is granted in part and denied in part as follows: Abbott US's motion to compel arbitration is granted while the remainder of the motion is denied. Because Abbott's motion seeks relief identical to the relief sought in its complaint, judgment is entered in favor of Abbott

US on Count I, and in favor of Qiagen on Counts II and III.  The clerk is directed to enter a Rule 58 judgment, to terminate all pending dates, and to terminate this case from the court's docket.

ENTER:

DATE:  April 15, 2010

_____
Blanche M. Manning
United States District Judge